FILED
CLERK
11/26/2018 9:56 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**

UNITED STATES OF AMERICA,        : 18-CR-00607-JFB
                                 :
        - versus -               : U.S. Courthouse
                                 : Central Islip, New York
KHWAJA, et al.,                  :
                Defendant        : November 15, 2018
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government:**            **Richard P. Donoghue, Esq.**
                                 United States Attorney

                          BY:    **Burton T. Ryan, Jr., Esq.**
                                 Assistant U.S. Attorney
                                 100 Federal Plaza
                                 Central Islip, NY 11722


**For Defendant E. Khwaja:**       **Anthony LaPinta, Esq.**
                                 Reynolds, Caronia,
                                 Giannelli, Hagney,
                                 LaPinta & Hargraves
                                 200 Vanderbilt Motor Pkwy
                                 Hauppauge, NY 11788


**For Defendant A. Khwaja:**       **Nancy L. Bartling, Esq.**
                                 LaRusso & Conway, LLP
                                 300 Old Country Rd, Ste 341
                                 Mineola, NY 11501


**For Defendant Rahimi:**          **Alan M. Nelson, Esq.**
                                 300 Marcus Avenue
                                 Lake Success, NY 11042


**For Defendant Rhamatzada:**      **Glenn Obedin, Esq.**
                                 Naiburg, Obedin
                                 & Weissman, LLP
                                 320 Carleton Avenue
                                 Central Islip, NY 11722


**Transcription Service:**         **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

                                                        2
                              Proceedings

1               THE CLERK:  Calling Case 18-cr-607, United

2    States of America v. Khwaja.

3               Counsel, please state your appearance for the

4    record.

5               MR. RYAN:  For the government, your Honor,

6    Burton Ryan.

7               MR. LAPINTA:  Appearing for Enayatullah Khwaja,

8    Anthony LaPinta.

9               Good morning, your Honor.

10              THE COURT:  Good afternoon, Mr. LaPinta.

11              MS. BARTLING:  Good afternoon, your Honor.

12              Appearing for Abdulrahman Khwaja, Nancy

13   Bartling.

14              MR. OBEDIN:  Good afternoon, your Honor.

15              Appearing for Shikeba Rhamatzada, Glenn Obedin.

16              THE COURT:  Good afternoon, Mr. Obedin.

17              MR. NELSON:  Good afternoon, your Honor.

18              Appearing on behalf of Rana Rahimi, Alan

19   Nelson.

20              THE COURT:  Good afternoon, Mr. Nelson.

21              We have all four defendants present in the

22   courtroom.  As you know, this case was assigned me

23   pursuant to the indictment that was returned by the grand

24   jury.  I assume all four defendants were arrested earlier

25   today.  Mr. Ryan, is that correct?

3

Proceedings

1          MR. RYAN:  That's correct, Judge.

2          THE COURT:  Okay.  Let me just advise them of

3  their rights.

4          I'm going to advise you of your rights, each of

5  the four defendants.  You have the right to have the

6  charges that have been filed against you presented to you

7  and get a copy of it.  That would be the indictment.

8          You have the right to retain counsel or if you

9  cannot afford counsel, one would be appointed to

10  represent you in the case.  You also have the right to

11  have the circumstances, if any, under which you should be

12  released on bail be considered by the Court and you have

13  a right not to make a statement and any statement you

14  make can be used against you.

15          Do you understand that -- I'm just going to use

16  the first initial -- Mr. E. Khwaja?

17          DEFENDANT E. KHWAJA:  Yes.

18          THE COURT:  Mr. A. Khwaja?

19          DEFENDANT A. KHWAJA:  Yes.

20          THE COURT:  Ms. Rhamatzada?

21          DEFENDANT S. RHAMATZADA:  Yes.

22          THE COURT:  And Ms. Rahimi?  You just have to

23  speak into the mic.

24          DEFENDANT R. RAHIMI:  Yes.

25          THE COURT:  Okay.  So first I am going to deal

4

Proceedings

1   with the issue of counsel.  I have -- I think I have only

2   two financial affidavits before me but it appears I have

3   the one for A. Khwaja, as well as Rhamatzada, Ms.

4   Rhamatzada, but it appears they have significant assets

5   based upon the affidavit.

6          So let me just ask you, Mr. Obedin, is it her

7   intention to retain counsel?  Is that -- what do you

8   understand to be her intention?

9          MR. OBEDIN:  Well, your Honor, it's my

10  understanding that the family has retained counsel.

11         THE COURT:  Oh, okay.

12         MR. OBEDIN:  I spoke earlier this evening or

13  this afternoon with Noam Biale from Sher Tremonte who

14  informed me that he is retained --

15         THE COURT:  Okay.

16         MR. OBEDIN:  -- to represent my client but he

17  would like me to go forward with the arraignment and to

18  make a bail application.

19         THE COURT:  Okay.

20         MR. OBEDIN:  And so I am prepared to do that.

21         THE COURT:  Okay.

22         MR. OBEDIN:  However, I did not discuss the

23  waiver of time with him and I would be more comfortable

24  not waiving time and allowing him to make that decision

25  when he ultimately steps in which he told me could be as

5

Proceedings

1  early as tomorrow if the Court wanted to put the case

2  back on for tomorrow.

3          THE COURT:  Yes, I certainly -- especially if

4  you're not comfortable waiving time, to put it on for

5  tomorrow.

6          MR. OBEDIN:  I think that would best.

7          THE COURT:  Okay.  But let me just ask your

8  client, are you -- Ms. Rhamatzada, as you heard, your

9  retained counsel is not available today.  So I just want

10 to make sure you're okay with Mr. Obedin representing you

11 for today's proceeding.

12         DEFENDANT S. RHAMATZADA:  Yes.

13         THE COURT:  Okay.  So I am going to appoint

14 you, Mr. Obedin, just for today, okay?

15         And Ms. Bartling, what's your understanding?

16         MS. BARTLING:  Your Honor, I have not spoken to

17 any other attorney and my client indicated to me he would

18 like me to proceed as his counsel.  He is authorized me

19 and agreed to have me proceed and with respect to that, I

20 will continue if the Court allows.  I haven't not spoken

21 to anyone else, so at this point, it's not my belief that

22 he will be hiring additional counsel.

23         THE COURT:  Yes.  I mean, I will allow you to

24 certainly to represent him for purposes of today but, for

25 example, it says he has a $900,000 home.  So I don't know

6

Proceedings

1   what the equity is in the home but he would have to give

2   me more information for me to appoint you for beyond

3   today, okay?

4           MS. BARTLING:  Understood.

5           THE COURT:  All right.

6           Mr. LaPinta, what's your understanding?

7           MR. LAPINTA:  Your Honor, my client has advised

8   me of his desire to have me continue with his

9   representation.  I'm not aware of whether he has filled

10  out a financial affidavit or not.  I haven't spoken to

11  him regarding his finances or ability to retain counsel.

12  There's been  no private lawyer that's been engaged or in

13  contact at this juncture and I am prepared to move

14  forward until otherwise directed by the Court.

15          THE COURT:  Okay.  Yes, again, similar to the

16  other counsel, I will appoint you for purposes of today's

17  proceeding.  I would ask that you work with your client

18  to fill out the affidavit to see whether he would qualify

19  to have you be appointed or not, okay?

20          MR. LAPINTA:  Yes.

21          THE COURT:  All right.

22          And Mr. Nelson, what's your understanding?

23          MR. NELSON:  Judge, I am in the position as Mr.

24  LaPinta is.  I have spoken to my client, as well as her

25  husband.  They would like me to proceed and represent

7

Proceedings

1  them for purposes of today.  I spoke with pretrial

2  services, and they were going to have an affidavit

3  prepared.  I believe that a representative of pretrial

4  services just left to get the fee affidavit they have

5  prepared and I am prepared to proceed today with the

6  Court's permission on behalf --

7          THE COURT:  But you believe that they will

8  qualify based upon your conversations or you don't know?

9          MR. NELSON:  I'm not sure, Judge.

10          THE COURT:  Okay.

11          MR. NELSON:  I'm acquiring information

12  concerning the equity in their home for purposes of

13  potential bail application at a later time.  I think

14  that's going to be the Court's decision.

15          THE COURT:  All right.  Okay.  So I will also

16  appoint you, at least for purposes of today, until we

17  figure out the financial circumstances to represent Ms.

18  Rahimi.

19          In terms of what I thought we would do, I know

20  we we're waiting for some pretrial services report, for

21  any counsel who wished to make a bail application today,

22  obviously I will wait for the report and my understanding

23  from talking to my deputy is that would be at least -- is

24  it Mr. Nelson --

25          THE CLERK:  Yes, Judge.

8

Proceedings

 1           THE COURT:  Yes, Mr. Nelson, you don't plan on

 2    making a bail application today, is that correct?

 3           MR. NELSON:  That's correct, your Honor.

 4           THE COURT:  All right.  So we will proceed with

 5    everything except the bail issues and Mr. Nelson, you

 6    could even -- once we get through with you, you can

 7    leave.  You don't have to hang around for the bail

 8    arguments if you don't want to.  You're free to stay

 9    obviously, if you wish.  Okay?

10           MR. NELSON:  Thank you, your Honor.

11           THE COURT:  All right.  So are each of the

12    clients prepared to be arraigned on the indictment?

13           MR. LAPINTA:  Yes, your Honor.

14           MR. OBEDIN:  Yes, your Honor.

15           MS. BARTLING:  Yes.

16           MR. NELSON:  Yes.

17           THE COURT:  Okay.  Mr. -- how do you pronounce

18    the first name?

19           DEFENDANT E. KHWAJA:  [N-EYE-TOE-LA].

20           THE COURT:  -- Enayatullah Khwaja, have you

21    received a copy of the indictment?

22           DEFENDANT E. KHWAJA:  Yes.

23           THE COURT:  Have you had time to review it and

24    discuss it with Mr. LaPinta for purposes of being

25    arraigned?

9

Proceedings

1          DEFENDANT E. KHWAJA:  Yes.

2          THE COURT:  Do you waive the public reading of

3   the entire indictment?

4          DEFENDANT E. KHWAJA:  Yes.

5          THE COURT:  And how do you plead, guilty or not

6   guilty?

7          DEFENDANT E. KHWAJA:  Not guilty.

8          THE COURT:  All right.  A not guilty plea has

9   been entered.

10          Mr. Abdulrahman Khwaja, have you received a

11   copy of the indictment?

12          DEFENDANT A. KHWAJA:  Yes, sir.

13          THE COURT:  Have you had time to discuss it and

14   review it with Ms. Bartling for purposes of your

15   arraignment?

16          DEFENDANT A. KHWAJA:  Yes.

17          THE COURT:  Do you waive the public reading of

18   the indictment?

19          DEFENDANT A. KHWAJA:  Yes.

20          THE COURT:  How do you plead, guilty or not

21   guilty?

22          DEFENDANT A. KHWAJA:  Not guilty.

23          THE COURT:  Okay.  A not guilty plea has been

24   entered.

25          Ms. Rhamatzada, have you received a copy of the

10

Proceedings

1    indictment?

2              DEFENDANT S. RHAMATZADA:  Yes.

3              THE COURT:  Have you had time to discuss it --

4    review and discuss it with Mr. Obedin for purposes of the

5    arraignment?

6              DEFENDANT S. RHAMATZADA:  Yes.

7              THE COURT:  Do you waive the public reading of

8    the indictment?

9              DEFENDANT S. RHAMATZADA:  Yes.

10             THE COURT:  How do you plead?

11             DEFENDANT S. RHAMATZADA:  Not guilty.

12             THE COURT:  Okay, a not guilty plea has been

13   entered.

14             And Ms. Rahimi, have you received a copy of the

15   indictment?

16             DEFENDANT R. RAHIMI:  Yes.

17             THE COURT:  Have you had time to discuss it

18   with Mr. Nelson and review it?

19             DEFENDANT R. RAHIMI:  Yes.

20             THE COURT:  Do you waive the public reading of

21   the indictment?

22             DEFENDANT R. RAHIMI:  Yes.

23             THE COURT:  How do you plead, guilty or not

24   guilty?

25             DEFENDANT R. RAHIMI:  Not guilty.

Proceedings

1        THE COURT:  Okay.  Ms. Rahimi has entered a not

2   guilty plea.  Okay.

3        So why don't I hear from the government, not on

4   the issue of bail yet but in terms of just generally

5   moving forward.

6        MR. RYAN:  Judge, two things; one, we believe

7   the case which involves months of electronic surveillance

8   of these defendants is a complex case.  Not only is there

9   electronic surveillance, there's also a tremendous number

10  of bank records.  There's at least 21 different bank

11  accounts that were seized today and the bank records go

12  back many years, as well as the execution of search

13  warrants that is ongoing as we speak of the businesses

14  and their bank records.

15       So we believe that the case should be declared

16  a complex case for Speedy Trial purposes.  Also, we have

17  submitted to -- under separate cover to your Honor today,

18  an application for an order to unseal certain of the

19  defendants' electronic interception, so that we can serve

20  them and their attorneys with copies of the electronic

21  interceptions.

22       THE COURT:  All right.

23       MR. RYAN:  And so we intend to proceed

24  immediately to discovery, as soon as those issues are

25  addressed.

12

Proceedings

1          THE COURT:  Okay.  Have you discussed with
2     defense counsel a date for the next status conference or
3     you didn't get that far?
4          MR. RYAN:  I believe, Judge, that there was a
5     discussion originally of 30 days but when everyone
6     realized that new counsel would be coming in, I believe
7     that there was a date about 14 days out as a control date
8     that was selected while the issue of representation is
9     resolved.
10          THE COURT:  All right.  Is that November 30th
11     then?  Is that what the date -- Michelle?
12          THE CLERK:  Yes, November 30th.
13          THE COURT:  Okay.
14          THE CLERK:  It's the date, at 1 o'clock.
15          THE COURT:  All right.  In terms of the complex
16     case designation, I think I will hold off on that
17     designation until again, we figure out who the counsel is
18     going to be, make sure that they don't disagree with
19     that.  I will, obviously, deal with the Speedy Trial
20     issue independent of that designation.
21          But let me start with Mr. Nelson, since you're
22     not making a bail application today, so what do you want
23     to do in terms of the next date, Mr. Nelson?  Did you
24          MR. NELSON:  Your Honor, I have discussed this
25     with my -- I have discussed the issue with my client and

13

Proceedings

1    we are prepared to exclude Speedy Trial till November the

2    30th at 1 o'clock, which I understand is a convenient

3    time for the Court.

4                THE COURT:  Okay.  Have you executed the

5    waiver?

6                MR. NELSON:  Yes, I have.

7                THE COURT:  Okay.  Do you have it?

8                THE CLERK:  They must still have it.  Does

9    defendant still have the waiver over there?

10               THE COURT:  Just give me one second.

11   (Pause)

12               THE COURT:  I now have all four pretrial

13   services reports.  I am just reviewing them.

14   (Pause)

15               THE COURT:  Okay.  Ms. Rahimi, I just want to

16   make sure you understand what this form means.  I am sure

17   Mr. Nelson has explained it to you.  You heard -- he's

18   asking me to adjourn your case until November 30th.  You

19   have a right to have a trial within 70 days of today

20   under the Speedy Trial Act.

21               However, you also have the right to ask that

22   that clock be stopped because you want to have time to

23   consider how you want to proceed with respect to the

24   case.  I am trying to read the handwriting here in terms

25   of the reason.

14

Proceedings

1          MR. NELSON:  Your Honor, it would be to review

2    the discovery that's provided by the government.

3          THE COURT:  Okay.  I don't know what that says.

4          MR. NELSON:  You wouldn't be the first person

5    to have difficulty reading my handwriting, your Honor.

6          THE COURT:  Oh, does that say review of

7    discovery, is that what you wrote?

8          MR. NELSON:  Yes.

9          THE COURT:  Okay.  Yeah, I could see that now.

10   Okay.  I will leave it.  So that will give -- the

11   government is going to give discovery or evidence in the

12   case to you and your attorney to start reviewing it, and

13   how you want to proceed with respect to the case.

14          Also, as I will discuss in a moment, your

15   lawyer is consenting to your detention without prejudice

16   to  making a bail application.  So even before November

17   30th, he can ask to come in and make a bail application

18   at you request.

19          But I want to make sure you understand by

20   signing this, you're agreeing to stop that clock until

21   November 30th, so that you and your lawyer can do those

22   things.  Is that your wish?

23          DEFENDANT R. RAHIMI:  Yes.

24          THE COURT:  Okay.  So I am going to -- and

25   obviously, we'll deal with this issue with the other

Proceedings

1    three defendants if they don't agree to that next date

2    but I am going to put this defendant on for November 30th

3    at 1 p.m.  There's only one Speedy Trial clock for the

4    case and again, I will deal with this issue in a moment

5    with the other defense counsel but for purposes of this

6    defendant, at least for now, I am excluding the time from

7    today until November 30th, under Title 18 USC Section

8    3161(h)(7)(A), in order to allow her and her counsel time

9    to obtain the discovery and review it and decide how they

10   wish to proceed with respect to the case.

11           I find that the ends of justice served by

12   granting the continuance outweigh the best interest of

13   both the public and the defendant in a speedier trial.

14           Actually, I am looking at the waiver now.  I

15   see that other defendants have signed it as well.  I am

16   just trying to -- Mr. Abdulrahman signed it, is that

17   correct, Ms. Bartling?

18           MS. BARTLING:  That's correct.

19           THE COURT:  Okay.  And who is the defendant

20   number one's signature, I can't read --

21           MR. LAPINTA:  I did, your Honor, yes.

22           THE COURT:  Okay.  So your client is willing to

23   agree to that, as well?

24           MR. LAPINTA:  To the Speedy Trial waiver, yes.

25           THE COURT:  Okay.  So let me just --

16

Proceedings

1  Enayatullah Khwaja and Abdulrahman Khwaja, you heard what
2  I just explained.  It's the same thing for you, by
3  signing this waiver, you're agreeing to exclude the time
4  under the Speedy Trial Act until November 30th, so you
5  and your attorneys can obtain discovery and review it.
6          Is that your wish, Mr. Enayatullah Khwaja?
7          DEFENDANT E. KHWAJA:  Yes.
8          THE COURT:  And Mr. Abdulrahman Khwaja?
9          DEFENDANT A. KHWAJA:  Yes.
10         THE COURT:  Okay.  So again, I am making the
11 same finding as with respect to them.  And let me just
12 ask you, Mr. Obedin, what's your intention with respect
13 to this issue?
14         MR. OBEDIN:  Yes, your Honor.
15         THE COURT:  I guess we're going to put this on
16 for tomorrow --
17         MR. OBEDIN:  Since I am only here for the
18 purpose of arraignment --
19         THE COURT:  Right.  Okay.
20         MR. OBEDIN:  -- I really think it's in the best
21 interest of my client to speak with her retained attorney
22 tomorrow --
23         THE COURT:  Okay.
24         MR. OBEDIN:  -- and make that determination.
25         THE COURT:  So what I am going to do is I am

Proceedings

1  excluding the time -- as I said, there's only one clock

2  for the case as a whole, I am excluding it to the 30th,

3  subject obviously to new counsel coming in for Ms.

4  Rhamatzada and if there is an objection to that, I will

5  deal with it but for present purposes, I am excluding the

6  time from today for the entire case, all four defendants

7  who are present, until November 30th.

8          Under 3161(h)(7)(A), as respect to all of them,

9  I find that the ends of justice served by granting the

10  continuance outweigh the best interest of the public and

11  the defendants in a speedier trial, in order to resolve

12  these counsel issues, obtain the discovery and start

13  reviewing it.  All right, so, I have signed the waiver

14  for the three defendants who signed it.

15          Okay.  I have the government's detention letter

16  and you're seeking detention with respect to all four

17  defendants, both on risk of flight and danger to the

18  community, Mr. Ryan?

19          MR. RYAN:  Judge, I believe that there is a

20  danger to the community and risk of flight for all four

21  defendants, though I believe the primary danger is by the

22  organizers of the -- and the operators of the scheme, the

23  two cousins, Khwaja.  I believe that --

24          THE COURT:  Okay.  Hold on.  I just want to

25  deal with Mr. Nelson first.

18

Proceedings

1            MR. RYAN:  Oh, Mr. Nelson's --

2            THE COURT:  I just wanted to confirm, you're

3    seeking detention for all four?

4            MR. RYAN:  I seek the detention of all four,

5    Judge.

6            THE COURT:  On both grounds?

7            MR. RYAN:  On both grounds.

8            THE COURT:  Okay.  So Mr. Nelson, I just want

9    to confirm as you said earlier, you're consenting to

10   detention without prejudice to reopening the bail hearing

11   at any time?

12           MR. NELSON:  That's correct, your Honor.

13           THE COURT:  Okay.

14           MR. NELSON:  I do anticipate having a bail

15   package to present to the Court by November the 30th, if

16   not earlier but at the present time, we'll consent to the

17   entry of a permanent order of detention without

18   prejudice.

19           THE COURT:  Okay.  Based upon the indictment

20   and the government's letter, as well as the other

21   information I have in the pretrial services report, at

22   this juncture, on consent, I am detaining Ms. Rahimi as a

23   danger and on risk of flight without prejudice to a

24   future bail application on November 30th or sooner and

25   then obviously, it will be a de novo review.  Okay?  All

19

Proceedings

1    right.

2             So now then do you want to address then the

3    issue of detention with regard to the other three

4    defendants?

5             MR. RYAN:  Yes, Judge.  I believe pretrial

6    services has submitted the reports for the other three

7    defendants.

8             THE COURT:  Yes, I have them but if you want to

9    say anything else orally beyond your letter --

10            MR. RYAN:  Judge, I believe it's unnecessary to

11   say anything beyond the letter at this point.  If there's

12   any specific issues raised by defense counsel in

13   argument, I will just address them in response.

14            THE COURT:  Whoever wants to go first -- Mr.

15   LaPinta, do you want to go first?

16            MR. LAPINTA:  Yes, your Honor.  Your Honor,

17   before I begin, please note that in court, the support of

18   my client is his wife of 18 years, his two sisters and

19   his brother-in-law.

20            As you note from the pretrial report, my client

21   is 44 years of age.  He's a citizen of the United States,

22   having been naturalized in 1996.  His parents are

23   residents of Long Island, as are his two sisters, as well

24   and his brother.

25            The family has been residing in Nassau County

20

Proceedings

1   since they came to the United States back in the early

2   '80s when my client was a young boy.  He's been here now

3   since the age, I believe of 10.

4           He's gainfully employed.  He's the sole

5   financial supporter of his family.  He has three

6   children, ages 19, 18 and 13.  Most notably, his youngest

7   child, his daughter, has autism and autism spectrum,

8   apraxia is the name of the condition that she suffers

9   from and she requires constant attention and support,

10  both emotionally and physically.

11          Most of his family, as I said, resides in this

12  area.  He does have a prior conviction, although I would

13  say misdemeanor, damage of property conviction where he

14  successfully completed three years of probation in Nassau

15  County.  He has no history at all of alcohol abuse or

16  drug abuse or mental health treatment.

17          While his wife does work, it's a part-time

18  position in Bloomingdale's in the Huntington Mall.

19          We are prepared with the benefit of having his

20  family owning property, the indictment does list the

21  forfeiture of all of the -- my client's properties, his

22  residence, his investment properties, all of his bank

23  accounts.

24          However, his family members not related to this

25  indictment are prepared to post their properties and we

21

Proceedings

1    are prepared after my doing investigation and speaking

2    with his family members, we are prepared to post $2.5

3    million in a secured bond, secured by my client's

4    parent's property located in Glen Head, Nassau County.

5            There are other properties that we are prepared

6    to post as well, up to an amount of $4.5 million.

7            In addition to that secured bond, we are

8    willing to surrender the passport that I believe that was

9    seized today by the authorities when they executed the

10   search warrant.  We are, of course, willing to limit our

11   travel restrictions to the Metropolitan area, Eastern

12   District, Southern District and report to pretrial

13   services at the Court's discretion.

14           I understand pretrial is recommending that no

15   bail conditions can satisfy their concern of a risk of

16   flight.  If the Court is impressed with that, I would ask

17   that you consider a home confinement situation that would

18   enable him to at least be with his family and provide

19   support, both financially and emotionally during this

20   difficult time.

21           What I will say in reference to the

22   government's submission, is that no matter how you dice

23   this case, it's a nonviolent crime, it's a financial

24   crime, it seems as though from my reading of it, they're

25   trying to bootstrap narcotics distribution and kind of

Proceedings

1  making a quasi-presumption case but my argument is is

2  that if it was so closely related to the sale and

3  distribution of narcotics overseas, there would be a

4  charge of conspiracy to distribute narcotics that would

5  be part of this indictment and it is clearly not.

6          So what is presented before the Court are, I

7  was going to say simple financial crimes, simple but yet

8  complicated financial crimes that are nonviolent in

9  nature that are deserving of a bail package and in light

10 of my client's contacts with the community, and his

11 willingness to obey by numerous imposed conditions that

12 the Court has satisfied, I believe we've presented an

13 overwhelming package that would assure the Court of his

14 presence in court.

15         THE COURT:  Well, let me just ask you a couple

16 of questions before I hear from Mr. Ryan, if he wants to

17 respond.  The government's letter talked about him being

18 -- having permanent residency status, as well in Saudi

19 Arabia.  I don't see that in the pretrial services

20 report.  So I don't -- is he disputing that or --

21         MR. LAPINTA:  Is that to me or the government?

22 I'm sorry.

23         THE COURT:  No, I am asking you whether --

24         MR. LAPINTA:  He does have a residence visa for

25 that country, yes.

23

Proceedings

1          THE COURT:  And they also represent obviously

2    that the import-export business operates out of Saudi

3    Arabia, is that accurate or not accurate?

4          MR. LAPINTA:  Well, he does business in Saudi

5    -- has done business in Saudi Arabia but in speaking to

6    my client, he is able to function and operate his

7    business from his home without traveling.

8          THE COURT:  I'm not focused on whether -- I

9    understand he spends, even though he does foreign travel,

10   that he spends his time in the United States but if the

11   company operates out of Saudi Arabia, that's obviously

12   significant.  so I don't know whether he disputes that or

13   not.

14         MR. LAPINTA:  Let me just clarify.

15   (Counsel and client confer)

16         THE COURT:  I think I read that in the

17   government's letter, is that --

18         MR. RYAN:  Yes, Judge.  The evidence that we

19   have is that they operate a business in Saudi Arabia.

20         THE COURT:  What's the name of the business?

21         MR. RYAN:  It's -- they're in imports and

22   exports, it involves toys, it involves distribution of

23   electronics and I is a company that he has gone to Saudi

24   Arabia a number of times to supervise and operate.

25         MR. LAPINTA:  I speaking to my client, your

Transcriptions Plus II, Inc.

24

Proceedings

1   Honor, he is willing, as a condition of bail, to forgo

2   any of his interest in that property or involvement in

3   that aspect of his businesses, understanding your concern

4   of his ties to that country and the allegations contained

5   in the indictment and however way we could do that and

6   assure the Court that he is not operating a business out

7   of that country, we'll do that.

8            THE COURT:  Before I hear from Mr. Ryan, the

9   only other -- you made a point about that this is not a

10  narcotics case but in terms of the type of proof that the

11  government has, that he is operating a money laundering

12  business that's funneling narcotics proceeds, one of the

13  things that they rely upon is in their letter and I know

14  you don't have the discovery yet but it seems to be very

15  direct where they say an undercover posing as a drug

16  dealer met in a hotel parking lot and that the defendant

17  received bulk currency from the undercover, purporting to

18  be illegal drug sales.  Is that accurate, Mr. Ryan?

19           MR. RYAN:  That's correct, Judge.

20           THE COURT:  So that's not like an indirect

21  theory.

22           MR. LAPINTA:  Well, what is confusing to me is

23  that as I see it and as I read it, that seems to be part

24  of the conspiracy of drug dealing.

25           THE COURT:  Yeah.

25

Proceedings

1          MR. LAPINTA:  Why isn't he charged with that?

2          THE COURT:  I don't know the answer to that

3    but --

4          MR. LAPINTA:  If it was a noteworthy act that

5    in furtherance of narcotics distribution, in my

6    experience with the United States Attorney's Office, they

7    would charge that and then you would be presented with a

8    presumption case regarding bail and you're not.

9          THE COURT:  All right.  Let me hear from Mr.

10   Ryan.  Mr. Ryan, you can respond to anything Mr. LaPinta

11   has said.

12         MR. RYAN:  Judge, as the defendant has been

13   involved in multiple instances of receiving bulk cash and

14   using it to funnel monies to Paraguay and other places

15   where the source of the drug dealers are generally

16   operating out of in the tri-border area between

17   Argentina, Brazil and Paraguay, an undercover Homeland

18   Securities agent did provide cash that it was represented

19   to the defendant to be the proceeds of drug dealing that

20   was then transported in the cash delivered to an

21   individual purporting to be a drug dealer in Paraguay.

22         There are -- in the conspiracy, there are at

23   least 13 undercover operations in which Homeland Security

24   or the DEA were instructed by drug dealers when the DEA

25   undercovers were acting as money launderers to transmit

26

Proceedings

1   the money they received to the Khwaja companies and

2   that's the nature of the way they operate.  It's a trade-

3   based operation in which they use cheap phones as a

4   method of transporting value from the United States to

5   South America.

6          They also directed transport currency at times

7   to South America or to their brokers in the tri-border

8   area.  There's extensive evidence of this, not only from

9   a number of months of wiretaps but also the defendant's

10  phones were examined by Customs agents at various times

11  at border crossing.  WhatsApp applications were found on

12  the defendants' phone transmitting money and arranging

13  for the delivery of cash and many of these individuals

14  have been identified directly as involved in the drug

15  trade, or in other criminal organizations both in South

16  America and here in the United States.

17          THE COURT:  All right.  Based upon my review of

18  the indictment, and the government's letter, as well as

19  my review of the pretrial services report, the Court is

20  -- and obviously I have heard the arguments today, I am

21  detaining Enayatullah Khwaja.  I found the government has

22  met its burden both on the issue of risk of flight, by a

23  preponderance of the evidence and at least based upon the

24  indictment and the proffer of the government on the issue

25  of danger -- by clear and convincing evidence with

27

Proceedings

1    respect to danger to the community, that detention is

2    warranted on both grounds.

3           The reasons are as follows, just addressing the

4    bail factors and I have considered all of them, I'm going

5    to focus on what I think is the most significant here.

6    Although the defendant has ties to the United States,

7    significant ties as Mr. LaPinta outlined, he also has

8    significant ties overseas.  He has some type of residency

9    status in Saudi Arabia.  He has a business that operates

10   in Saudi Arabia and certainly would have a place to go if

11   he wished to flee, could go to Saudi Arabia or another

12   country for that matter.

13          With respect to incentives to flee here, I

14   think they are overwhelming.  The government has outlined

15   in the indictment and in their detention letter, a vast

16   massive money laundering operation, operating largely

17   with money being funneled outside the United States to

18   South America over a five-year period through an import-

19   export business.  They proffer in their letter, which the

20   Court can accept in its discretion for purposes of the

21   bail hearing today, that this defendant structured over

22   $3 million in bank accounts, over $32 million pass

23   through third-party transactions and it is clear that he

24   -- there's millions and millions and millions of dollars

25   that has flowed through bank accounts and companies based

28

Proceedings

1   upon the nature of the scheme that's alleged, as

2   supplemented by the government's proffer.

3            so it appears based upon at least the charges

4   and the proffer that he has access to large quantities of

5   cash, millions of dollars in cash through these various

6   sources and therefore, I don't believe there's any

7   conditions or combination of conditions that can

8   reasonably assure his appearance in court because

9   although this is obviously a significant bail package

10  that Mr. LaPinta has set forth here, $4.5 million, for

11  someone who is involved in an alleged money laundering

12  scheme, involving amounts far surpassing that, that may

13  simply be the price of his freedom in order for him to

14  flee the country and he may have much more money that is

15  available to him in order to live, even losing $4.5

16  million and could obviously seek to make whole anyone who

17  lost money as a result of posting something.  I don't

18  know what all of their assets are, in any event, but even

19  assuming that this would be a substantial impact on their

20  financial well-being, based upon their own assets, the

21  money that he has available to him for himself and his

22  family in my view is overwhelming.

23           That's combined with what appears to be -- at

24  least again, this is based on the government proffer and

25  Mr. LaPinta I know doesn't have access to what the

29

Proceedings

1  government is relying on but I am always willing to re-

2  open it, if Mr. LaPinta comes back to me and tells me

3  what the government has proffered about the strength of

4  the case is inaccurate but they're relying on electronic

5  surveillance, Custom border searches, undercover

6  dealings, which they proffer has the defendant directly

7  involved with being the manager of this large money

8  laundering operation and it includes recorded

9  conversations with undercovers, so it appears to be a

10  very strong case based upon the government's proffer of

11  its evidence.

12          The defendant although obviously there's no

13  mandatory minimums or anything like that in this case,

14  given the amounts that are alleged for purposes of the

15  money laundering statute and guidelines, the government

16  is estimating, he is looking at an advisory range of

17  life, although it would be limited by the statutory

18  maximum, which is for all the counts together, 65 years

19  which is a -- essentially would be a life sentence.

20          So he's facing significant penalties in what

21  appears to be a strong case, has access to enormous

22  amounts of monies, including overseas, so I don't believe

23  there are any conditions or combination of conditions

24  that could reasonably assure this Court that he will show

25  up if I were to release him on bail.

30

Proceedings

1    On the issue of home detention, I don't view
2    that as a deterrent for somebody who really wants to flee
3    and has the money and the access to -- ability to flee
4    because nobody could -- if he was on a bracelet, he could
5    cut the bracelet and have a head start and it would be
6    very hard to find someone if they got a head start.  So I
7    don't really think home detention can assure the Court
8    that he wouldn't flee.
9    I also believe, and the issue of danger
10    obviously is his -- there are no drug charges.  There's
11    no alleged violence of any type.  However, given the
12    nature of these charges, which involve not just money
13    laundering for any type of illegal activity -- you know,
14    the specified activity here is that it's drug proceeds
15    and I believe that the laundering of drug proceeds
16    provides the mechanism for drugs to be distributed and
17    that someone who is involved in large-scale money
18    laundering as it relates to drug proceeds does pose a
19    danger to the community.
20    And again, on bail, even from home detention,
21    it would be difficult, if not impossible to really
22    monitor whether someone was continuing to be involved in
23    that type of activity when you have such a large-scale
24    network involving so many bank accounts, inside and
25    outside of the United States, there would be no way to be

31

Proceedings

1  able to reasonably assure that someone didn't continue

2  their involvement in money laundering, especially as I

3  said, you have an operation as to -- alleged to be of

4  this complexity and magnitude.  So I am detaining him as

5  well, by clear and convincing evidence for that reason.

6         And as I said, Mr. LaPinta, this is without

7  prejudice to you or another lawyer coming back and if

8  there's something about that I relied on in my analysis

9  based upon what's been proffered to me, that over time

10 appears to not be accurate, I am always willing to look

11 at it again, all right?

12        Although I would say on this issue of

13 representation, I'm looking at the pretrial services

14 report, his assets are -- his net worth is $1.9 million.

15 So that's obviously not going to qualify, so maybe -- I

16 know this was done quickly and maybe there is more to the

17 liabilities part of it but --

18        MR. LAPINTA:  Well, most if not all of that is

19 subject to forfeiture --

20        THE COURT:  Okay.

21        MR. LAPINTA:  -- contained in the claim --

22        THE COURT:  All right.

23        MR. LAPINTA:  -- the indictment.

24        THE COURT:  Well, again, you can have

25 discussion with him about that and you could submit a

Proceedings

1   letter to me on it with an affidavit.  We'll deal with

2   that in that way, okay?

3          MR. LAPINTA:  Yes, your Honor.

4          THE COURT:  All right.  Ms. Bartling, you can

5   go ahead.

6          MS. BARTLING:  Thank you.  Your Honor, with

7   respect to my client, Abdulrahman Khwaja, he's 62-years-

8   old, as the pretrial report indicates.  He is a citizen

9   of the United States.  He does not have dual citizenship

10  in any other country.  He's lived in New York for 35

11  years and he's actually lived at his Syosset address

12  where he owns that home since 1994.

13         He has four children.  They are all here in

14  support of him and they were all born in this country, as

15  well.  He is the sole supporter of his family.

16         I want to address the detention memo, your

17  Honor, from the government.  With respect to the flight

18  risk, as you can see in the indictment, there is quite a

19  large amount of bank accounts and real property that's

20  been subject to forfeiture.

21         That being said, my client doesn't appear and

22  doesn't seem to have access to any financial means in

23  order to flee the country.  That said, there could be

24  conditions that could be put in place such as ankle

25  monitoring or whatever needs to be put in place to ensure

33

Proceedings

1    his return to court, being that he does not have

2    financial means to flee, he wouldn't be a flight risk.

3            More importantly, with respect to the risk of -

4    - I'm sorry, the danger to the community, as Mr. Ryan

5    discussed that these allegations here involved drugs and

6    money laundering, Mr. Ryan indicates, I believe -- I am

7    not sure if he did on the record, but had indicated at

8    one point that there was an involvement in over 13

9    surveillances.  That's concerning to me that there were

10   over 13 surveillances done and if there was that large

11   number and no drug deals had gone -- happened in that

12   surveillance, I would think that a drug charge would have

13   been charged in that amount of surveillances.

14           That said, as the Court indicated, this is not

15   a presumption case.  It's not a drug case at all.  It's

16   actually a financial case and conditions can be met to

17   ensure his return.

18           In addition to that, most importantly, my

19   client's business is separate from Enayatullah Khwaja's

20   business.  He does not have a business in Saudi Arabia

21   and the detention memo written by the government seems to

22   group the two of them together as one stronger argument

23   for a risk of flight and danger to community but if you

24   refer to page 3, the main paragraphs relating to the

25   danger to the community, the first, you specifically --

34

Proceedings

1  which is what the Court addressed, involved meetings in

2  hotel parking lots, as well as money laundering, of drug

3  involvement.

4         My client is not a -- appears to be involved or

5  mentioned in that paragraph.  In fact, he's mentioned in

6  the following paragraph where they discuss structuring,

7  which as we know, are charges related to financial crimes

8  and not of danger to the community.

9         In addition, the following sentence which I

10 believe is used to further the government's argument for

11 a danger to the community, indicates that he was stopped

12 and offered a bribe to Customs agents.

13        My concern with that being an argument that he

14 is a danger, I don't see charges that he was brought --

15 that he was arrested or charged at any point with bribing

16 of Customs agents which was obviously a crime.

17        That said, these reasons under danger to the

18 community don't seem to support a permanent detention

19 that no conditions can be met in order to return his --

20 to ensure his return to court.

21        In addition, I am able, at this point, to

22 introduce two properties as a package at this point which

23 can total approximately over $2 million.  They are not

24 related to any of the family members.  They're not

25 related to any of the companies or anything listed in the

Proceedings

1    subject of forfeiture here.

2         It's my understanding one of them is my

3    client's son's wife's father, if the Court followed.  In

4    addition to that, the other one is my client's brother

5    who has no connection to -- anything to do with this --

6    the instant nature -- the nature of the instant offense.

7         In addition to that, your Honor, I believe that

8    there are conditions that can be met.  He can be wearing

9    a bracelet.  He could be forced to just contact with --

10   do business contacts within the United States.

11        In addition to that, he does not have a company

12   in Saudi Arabia.  He does not need to travel.  The Court

13   can put some sort of ban and we can surrender passports

14   and we can do all sorts of things in order for him to

15   maintain contact with only this jurisdiction and we're

16   able to do that.  He can still support his family and

17   make a living while on home detainment.

18        And for these reasons, we believe that he is

19   not a flight risk and that he is not a danger to the

20   community.

21        THE COURT:  Let me just -- before I hear from

22   Mr. Ryan, I mean you're trying to distinguish the proof,

23   I guess, from Enayatullah Khwaja's proof but there is in

24   the government's letter, they say on 13 occasions, your

25   client's companies received wires, in which agents acting

Proceedings

1    as undercovers were directed by the drug dealers to

2    transport money from drug sales to those companies, in

3    order to have them sent to South America.  Do you see

4    where I am reading that on page 3?

5            So there does appear to be proof that his

6    company was being utilized for drug dealers to funnel

7    money into South America, right?  Or am I misreading

8    that?

9            MR. RYAN:  That is correct, Judge.  In those

10   particular undercover operations of the DEA and the

11   homeland security were based on completely separate

12   investigations, not involving an investigation at that

13   time, into money laundering but into the various

14   different drug operations around the United States.

15           The one commonality of all of them is that the

16   drug dealers told the undercover DEA agents or homeland

17   security agents to transfer the drug money to this

18   defendant's companies in Florida, at which point the

19   company was identified as being the primary money

20   launderer between the United States and various South

21   American suppliers and cartels that were moving cocaine

22   and heroin into the United States.

23           THE COURT:  I mean, these companies that are

24   listed in paragraph 3 of the indictment, are his

25   companies.  These aren't --

37

                        Proceedings

1           MR. RYAN:  Those are his companies that he owns

2    and controls, not Mr. Enayatullah -- not the co-

3    defendants.

4           THE COURT:  All right.

5           MR. RYAN:  It's all part of the same conspiracy

6    but this is what the -- it's split up in the letter as to

7    the particular conduct of each set of companies that they

8    control.

9           THE COURT:  Okay.  I don't know if you want --

10   is there anything -- before I make a decision, is there

11   anything else you want to respond to that Ms. Bartling

12   said?

13          MR. RYAN:  No, Judge, I would just repeat the

14   arguments of pretrial services and the standards and

15   findings that you found for the co-defendant.

16          THE COURT:  All right.  I don't know if you

17   want to address that point.

18          MS. BARTLING:  No, your Honor.

19          THE COURT:  Okay.  I'm also detaining

20   Abdulrahman Khwaja.  I'm not going to repeat all the

21   grounds that I have already stated.  Almost everything I

22   said with respect to Enayatullah Khwaja applies to

23   Abdulrahman Khwaja in terms of, you know, his sentence,

24   the exposure he faces, the strength of the case and the

25   nature of the alleged scheme, in terms of the funneling

38

Proceedings

1    of vast sums of money overseas, millions and millions of

2    dollars, the government puts in the letter, that with

3    respect to this particular defendant, there was

4    structuring over $3 million into numerous bank accounts,

5    over $32 million dollars in third-party transactions

6    passed through his companies returning to South America.

7           So all of those reasons apply and although

8    again, that's a significant package and one distinction

9    is that he does not have any type of status in a foreign

10   country, as the co-defendant doesn't have a business

11   overseas, I don't think that that impacts the Court's

12   overall analysis that there are no conditions or

13   combination of conditions that can reasonably assure that

14   Abdulrahman Khwaja would appear in court and again, my

15   analysis with respect to home detention, bracelets is the

16   same.  I don't think that they will prevent someone who

17   wants to flee and has the ability to flee financially and

18   otherwise, and so I don't believe that that addresses the

19   Court's concerns.

20          I do also find for the same reasons that he is

21   a danger to the community by clear and convincing

22   evidence based upon the nature of the charges, combined

23   with the government's proffer, that drug dealers on more

24   than one occasion, 13 different occasions, were directing

25   an undercover, posing as a drug dealer, that the money

Proceedings

1    should be funneled through this defendant's companies.

2              So I believe for the reasons already indicated,

3    that large-scale funneling of drug proceeds creates a

4    danger to the community because it allows the drug

5    business to flourish.   So for those reasons, I am

6    detaining him on both grounds.   All right?

7              And Mr. Obedin?

8              MR. OBEDIN:   Thank you, your Honor.   First I

9    would like to point to the pretrial report and their

10   recommendation which is that Ms. Rhamatzada be released

11   on a substantial bond secured by property and co-signed

12   by responsible sureties, of which we have both with a

13   number of conditions, which we agree with and consent to

14   and feel are significant enough to ensure that she will

15   return each and every court date and not be a danger to

16   the community or a risk of flight.

17             She has lived here in the United States for

18   over 30 years.   She is a U.S. citizen, as is her husband,

19   as are her children, as are all her family who all live

20   here on Long Island.   She has no ties to any foreign

21   country.

22             Again, she has four children ages 16, 14, 12

23   and 8 and I would say, your Honor, that any risk of

24   flight is canceled out by the fact that she would

25   certainly not leave her children behind and it would not

40

Proceedings

1    be so easy for an individual to take an entire family and

2    flee, while it might be easy for one person individually

3    to do that.

4              With regard to the government's letter, when

5    they speak of danger to the community, they specifically

6    do not indicate that she is a danger to the community.

7    They speak specifically of the two gentlemen who have

8    already had their bail applications heard by the Court

9    and I believe that that is correct.  Clearly,

10   individually on her own, she is not a danger to the

11   community.  She -- even by the allegations, was not an

12   organizer, was not a manager, did not run these

13   businesses, even based on the proffer of the government

14   and the indictment, she worked there, did paperwork for

15   the company.

16             I have three homes, none of which are part of

17   the forfeiture allegations in the indictment.  The first

18   being her own home, where she lives with her husband who

19   is here and her four children.  That home has

20   approximately $800,000 in equity.

21             Then there is her brother who lives in

22   Farmingdale.  He is a doctor at St. Catherine's Medical

23   Center.  His wife is also an M.D. here on Long Island.

24   They live in their home with four young children and

25   their home is also worth approximately $800,000 in

41

Proceedings

1  equity.

2         And finally, her husband's brother who lives in

3  Kings Park with his wife and their child and that home is

4  worth approximately $650,000, so that's approximately

5  $2.1 or $2.2 million.

6         THE COURT:  Wait, who is the last one?  What

7  relationship?

8         MR. OBEDIN:  That's her brother-in-law.  It's

9  her husband's brother --

10         THE COURT:  Okay.

11         MR. LAPINTA:  -- who lives in Kings Park.  None

12  of those individuals are -- have anything to do with this

13  -- the allegations in these indictment and they are

14  prepared to put up their homes and sign personally on her

15  behalf.

16         I think given those circumstances, the fact

17  that pretrial makes their recommendation and we are in

18  agreement with all of the conditions, I think that is a

19  substantial enough package to ensure the safety of the

20  community, ensure that she will remain here in the

21  Eastern District of New York and I would ask your Honor

22  to grant that package.

23         THE COURT:  All right.  Mr. Ryan?

24         MR. RYAN:  Judge, the defendant is president of

25  two of the companies in which the undercover operations

42

Proceedings

1  of the agents were involved in transporting the money,

2  the agents in Florida that are owned by Abdulrahman.

3  She's the president of those companies and involved in

4  that, as an officer.

5         Also the pretrial services report indicates

6  that she is a -- has an ownership interest in 10

7  companies that she knows nothing about and could not give

8  values for or even names for, other than one.

9         It's our belief that these are, based on what

10  we have been able to trace out and the way that Khwaja

11  family distributes monies amongst themselves from the

12  companies, that we have been able to seize or lien the

13  bank accounts of, that this is all subject to potential

14  forfeiture and seizure and we would -- this package would

15  need to be reviewed and detailed by the agents and myself

16  before we could even come to a reasonable determination

17  as to whether it's acceptable or not.

18         And so we don't believe that a bail package

19  could be set today, given the lack of background and

20  information that has been provided to us at this late

21  date.

22         THE COURT:  Well, let me just -- in terms of, I

23  know you say that -- she is the president of the

24  companies but the indictment alleges that she is

25  basically a bookkeeper, right?  You're not alleging that

43

Proceedings

1  she is --

2        MR. RYAN:  Yes, but, Judge, the nature of the

3  booking is the -- when the customs audit occurred within

4  the last year in Florida, the way the nature of the books

5  are, they could not identify the source of funds for the

6  various shipments or the -- they were unable to identify

7  who -- the people who were paying for whatever shipments

8  they were making, were not the people who were receiving

9  it.  It was all third-party payments and they were not

10  able -- the way the books are kept is they're moved from

11  company to company within the Khwaja enterprise, so that

12  it's impossible to tell who is the ownership or who is

13  the control, or who is the nature of the money that it

14  comes from.

15        And we do know from other indictments and other

16  arrests we've made, that the true ownership of the money

17  is completely different third parties who have been

18  ordered or directed the money be sent to the Khwajas, to

19  then be shipped as phones to South America where it's

20  sold and delivered to them.

21        She is the one that maintains the double sets

22  of books and records that help show who the true owner of

23  and the person that they have to get the money to is,

24  which is separate and apart from what they report to

25  Customs and what they report in any of the shipping

44

Proceedings

1  labels or any of the other public records that have been

2  available.

3          So her position puts her in a position to know

4  that they're money laundering, to know that the money is

5  not going to the people that they're shipping the phones

6  to.

7          THE COURT:  What's the nature of your proof

8  against her?

9          MR. RYAN:  The nature of the proof again is

10 both the electronic eavesdropping that we have occurred,

11 as well as the audit that was made by the Customs

12 individuals of the companies that she is president of and

13 that she was involved in in Florida, as well as the fact

14 that third-party deliveries of bulk cash had been made to

15 companies under her control.

16         THE COURT:  What evidence do you have regarding

17 her sharing the proceeds?  I know you said she has an

18 ownership interest in the ten companies but what do you

19 know about her sharing in the proceeds?

20         MR. RYAN:  It's our understanding that the --

21 we don't have -- and that's what the search today will

22 help uncover but we do know how the family distributes

23 ownership is in sort of a pro rata sharing business,

24 based on the family -- that's why -- it's a closely-held

25 family corporation, Judge.

45

Proceedings

1          THE COURT:  What search warrants are you doing
2    today?
3          MR. RYAN:  Today, we're doing search warrants
4    on all the companies here on Long Island, which is listed
5    on -- in the indictment on paragraph 2 and 3, and all the
6    companies in Florida are also being searched as we speak.
7          THE COURT:  All right.  Do you want to respond
8    to that, Mr. Obedin?  Is there anything you want to
9    respond to?  I do have concerns about ownership in ten
10   companies and that gives me some pause.
11         MR. OBEDIN:  Yes, your Honor.  That's something
12   that is mentioned apparently in the pretrial report.
13   It's not mentioned in the government's proffer.  It's not
14   mentioned in anything that they're directly stating to
15   the Court in regards to being a danger or a risk of
16   flight.
17         And I don't believe that Mr. Ryan has given you
18   anything than generalizations regarding that now.  You
19   certainly didn't given any specifics regarding my client.
20   He gave some generalizations that this is how the
21   "family", he uses that I guess, "family" maintains their
22   closely held businesses but my opinion is the same as
23   what your reaction was, that she is really a bookkeeper
24   and if she is listed as president, that's certainly in
25   name only.

46

                              Proceedings

1              THE COURT:  All right.  This is what I am going

2    to do.  First of all, I don't think based upon the

3    indictment and the government's proffer in their letter,

4    they don't -- there's really no -- there's insufficient

5    evidence that she is a danger to the community based upon

6    her involvement in a much larger scheme.  It appears

7    whatever her title is, that she acts at the direction of

8    other family members, including the co-defendants.  So I

9    don't really have a concern that especially when them

10   being detained, that if I were to release her, that

11   somehow she would run, you know, a vast money laundering

12   operation on her own.

13              So I am not going to detain her based upon risk

14   of flight (sic) but I am going to detain her, at least

15   for today, as a -- I'm not going to detain her as a

16   danger to the community but I am going to detain her as a

17   risk of flight because first of all, obviously the

18   exposure that she is facing, even though she is not the

19   head of this alleged operation, is still going to be

20   significant and my biggest concern at this point, is just

21   to get a better understanding of what access, based upon

22   her involvement in these companies, she would have to

23   large sums of money at this point.

24              Based upon the proffer, although it is

25   certainly not detailed, there is a concern that this bail

47

Proceedings

1   package, although it's significant, may not be adequate

2   to reasonably assure that she will appear in court

3   because of her position with these other companies and

4   ownership interest in these companies and potential

5   access to larger sums of cash, so if -- I am going to ask

6   that this counsel, that you put on the record, that he

7   come tomorrow, I am going to ask the government -- I am

8   going to want more detail, Mr. Ryan, tomorrow with

9   respect to Ms. Rahimi (sic) because I think this is

10  obviously a much closer question on risk of flight,

11  given --

12          MR. OBEDIN:  Your Honor, excuse me, it's Ms.

13  Rhamatzada.

14          THE COURT:  I mean -- I am sorry, it's late.

15  Ms. Rhamatzada.  So, I think the government is going to

16  have to come back with more detail and maybe after

17  speaking to Mr. Obedin or her retained counsel, there

18  might be a way of addressing whatever concerns the

19  government has with additional security.  This seems to

20  be substantial to me and maybe sufficient, absent some

21  either result of the searches today.  I don't know how

22  much information you'll get quickly or more detailed

23  information from the government that she has in bank

24  accounts or elsewhere, access to large amounts of cash.

25  If the government doesn't supply that, my intention would

48

Proceedings

1   be to release her either on this package or something

2   close to it with home detention and electronic

3   monitoring, okay?  Understood?

4          MR. RYAN:  Absolutely, Judge.

5          THE COURT:  All right.  So we'll put it on for

6   tomorrow for that defendant only.  Obviously, no one else

7   -- I'm not going to have any of the other defendants

8   produced tomorrow.

9          What time, Michelle?

10         THE CLERK:  1 o'clock.

11         THE COURT:  1 o'clock for Ms. Rhamatzada.

12         MR. OBEDIN:  Okay.

13         THE COURT:  So I am entering the temporary

14   order of detention until tomorrow.  All right.

15         Are there any other issues today from the

16   government?

17         MR. RYAN:  No, Judge.  I believe that

18   completes --

19         THE COURT:  I'm going to ask you -- you

20   submitted the order and said it's going to be on an

21   oral --

22         MR. RYAN:  Except for the unsealing --

23         THE COURT:  Yeah, I want you to put in a

24   written application rather than just --

25         MR. RYAN:  All right.

49

Proceedings

1     THE COURT:  Okay?

2     MR. RYAN:  I will submit one tomorrow, Judge.

3     THE COURT:  All right.  Anything else from any

4  defense counsel?  And again, for the counsel who may want

5  to stay in the case, you have to discuss with the

6  defendants and their family whether or not they really

7  can qualify and I will wait to hear back from you, okay?

8     MR. NELSON:  Your Honor, I would only note that

9  during the course of the detention hearings, I did have

10  the opportunity to complete a financial affidavit with my

11  client that I submitted to the Court.

12     THE COURT:  Okay.  Let me look at it.

13  (Pause)

14     THE COURT:  So the home is -- what's the equity

15  in that home?

16     MR. NELSON:  It appears to be somewhere in the

17  area of $600,000, your Honor.

18     THE COURT:  And the annual income is $60,000,

19  is that --

20     MR. NELSON:  It's approximately $60 to $70,000

21  a year.

22     THE COURT:  Yes, I mean to me that's a large

23  sum of money we're talking, both in terms of income and

24  I'm trying to read the top part here, because the $60,000

25  is other income?

50

Proceedings

1          MR. NELSON:  That is dividend income she

2    receives and then she receives approximately $4 to $5,000

3    a month in income.

4          THE COURT:  Yes, I am not sure she is going to

5    be able to -- if you home that has over $500,000 in

6    equity and $60,000 a year coming in in other income, I

7    don't think that qualifies.  All right?

8          MR. NELSON:  I will appear at the next

9    appearance, your Honor, and I guess a definitive decision

10   will be made.

11         THE COURT:  Yes, you'll continue in the case

12   until she can find someone but obviously, she should

13   start looking, okay?

14         MR. NELSON:  Yes.

15         THE COURT:  All right.  Anything else?

16         MR. LAPINTA:  Nothing, your Honor.

17         THE COURT:  All right.  Thank you.

18              (Matter concluded)

19                   -o0o-

20

21

22

23

24

25

51

1

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **20th** day of **November**, 2018.

*Linda Ferrara*
Linda Ferrara

AAERT CET**D 656

Transcriptions Plus II, Inc.